11 CV 5083(MKB)(CLP)

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

---

EDWARD WEBER,

                           Plaintiff,

-against-

CITY OF NEW YORK; NEW YORK CITY DEPARTMENT OF
EDUCATION OF THE CITY OF NEW YORK; *et al.*

                           Defendants.

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

### GLASS KRAKOWER LLP

Attorneys for Plaintiff
100 Church Street, 8th Floor
New York, NY 10007

Bryan D. Glass, Esq.
Tel: 212-537-6859

REPRODUCED ON RECYCLED PAPER

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT

POINT I

DEFENDANTS ARE OFFENSIVELY COLLATERALLY ESTOPPED FROM RELITIGATING THE MISCONDUCT-BASED ALLEGATIONS RAISED AGAINST PLAINTIFF IN HIS SECTION 3020-A TRIAL AS A LEGITIMATE NONDISCRIMINATORY BASIS FOR BRINGING THE SECTION 3020-A PROCEEDING AGAINST HIM, AND THERE SHOULD BE A JURY TRIAL ON PLAINTIFF'S RETALIATION-BASED CLAIMS.. .........................................................4

POINT II

GENUINE ISSUES OF MATERIAL FACT EXIST AS TO PLAINTIFF'S ADEA AND TITLE VII CLAIMS.. ..................................................................................9

CONCLUSION..............................................................................................................................12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
EDWARD WEBER,

                                              Plaintiff,

        -against-


CITY OF NEW YORK, NEW YORK CITY           11-CV-5083
DEPARTMENT OF EDUCATION; LASHAWN         (MKB) (CLP)
ROBINSON, as Principal of Brownsville Academy
High School (BAHS); LANA PHILLIPS, as
Assistant Prinicipal of BAHS; and KATWONA
WARREN, as Assistant Principal of BAHS,

                                              Defendants
------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Plaintiff Edward Weber, a tenured chemistry teacher employed by the New York City Department of Education (NYCDOE), submits this memorandum of law in opposition to Defendants' motion for summary judgment, in order to explain that there are numerous triable issues of material fact regarding his Age Discrimination in Employment Act (ADEA) and Title VII religious discrimination and retaliation claims, and his analogous supplemental claims under state and city law, that warrant a trial before a jury.

Under existing law in this Circuit, Plaintiff clearly has a triable retaliation claim based on the fact that outrageous allegations of racial bigotry and eventually false Section 3020-a misconduct-based disciplinary specifications based, *inter alia*, on those allegations were initiated against him by Defendants shortly after he filed age and religious discrimination charges with the New York State Division of Human Rights (SDHR) against his school administrators. *See*

1

Disciplinary Specifications, Exhibit EEE to Declaration of Keri McNally ("McNally Declaration"). The result of those disciplinary specifications seeking termination of his employment before a neutral hearing officer, John Woods, was that he was *not* terminated from his employment, but merely only received a 60-day disciplinary suspension, and was restored to his teaching duties by Hearing Officer Woods. *See* Hearing Officer's Decision, dated June 14, 2012, Exhibit HHH to McNally Declaration. Nonetheless, Plaintiff has suffered severe economic and emotional distress damages by the discriminatory and retaliatory actions initiated against him by the school administrators, including, but not limited to, substantial loss of per session pay, lost summer school and afterschool Title I teaching positions, emotional distress damages, and being relegated to a less desirable status within the NYCDOE without a permanent position in the NYCDOE's Absent Teacher Reserve pool. *See* Letter from Andrew Gordon, Exhibit GGG to McNally Declaration.

Given that the Defendants had a full and fair opportunity to prosecute Plaintiff in a Section 3020-a trial, were unable to meet their preponderance of evidence of proving that Plaintiff committed misconduct, and elected not to appeal the Hearing Officer's findings and conclusions, Defendants are now collaterally estopped from relitigating the facts presented on those charges at the hearing as a good faith legitimate nondiscriminatory basis for proceeding to bring Section 3020-a misconduct-based disciplinary charges against Plaintiff. Since these misconduct-based charges (largely dismissed by a neutral Hearing Officer after a full and fair hearing) were brought against Plaintiff in retaliation for his filing complaints against Defendants, the Court should grant Plaintiff's motion for summary judgment on the liability issue of Title VII and ADEA retaliation as a matter of law and allow this claim to be tried on the issue of damages only. Alternatively, the Court should allow a jury trial to proceed on both liability and damages.

In addition, there are genuine issues of material fact as to whether Plaintiff was subject to a hostile work environment and disparate treatment based on his age and religion in violation of the ADEA and Title VII, and analogous state and city discrimination laws. On these issues, the Court also should allow these claims proceed to trial.

## ARGUMENT

### POINT I

**DEFENDANTS ARE OFFENSIVELY COLLATERALLY ESTOPPED FROM RELITIGATING THE MISCONDUCT-BASED ALLEGATIONS RAISED AGAINST PLAINTIFF IN HIS SECTION 3020-A TRIAL AS A LEGITIMATE NONDISCRIMINATORY BASIS FOR BRINGING THE SECTION 3020-A PROCEEDING AGAINST HIM, AND THERE SHOULD BE A JURY TRIAL ON PLAINTIFF'S RETALIATION-BASED CLAIMS.**

In *Burkybile v. Board of Education of the Hastings-on-Hudson Union Free School District*, 411 F.3d 306 (2d Cir. 2005), *cert. denied*, 546 U.S. 1062 (2005), the Second Circuit Court of Appeals considered the collateral estoppel effect of a Section 3020-a disciplinary trial against a pedagogue and found that a pedagogue could not litigate retaliation charges after being terminated after disciplinary charges in a Section 3020-a hearing. The Court held that the "Section 3020-a hearing is an administrative adjudication that must be given preclusive effect." *See id.* (citing *University of Tennessee v. Elliott*, 478 U,.S. 788 (1986). In this case, the Court is presented somewhat with the opposite of *Burkybile* (as the DOE itself is now precluded from relitigating misconduct-based disciplinary charges already adversely decided against it), and the NYCDOE must now come to bear the consequences of its own orchestrated retaliatory falsification of misconduct-based disciplinary charges against Plaintiff teacher.

Defendants' summary judgment motion is rife with attempts to avoid the consequences of the Second Circuit's decision in *Burkybile* by relying on alleged incidents of disciplinary misconduct that were already dismissed by Plaintiff's Section 3020-a Hearing Officer John Woods, in their attempt to justify their so-called non-legitimate discriminatory reasons for initiating the Section 3020-a charges against Plaintiff. This Section 3020-a proceeding was

4

initiated by Defendants, including by Defendant Robinson in conjunction with NYCDOE legal (*see* Robinson Deposition Transcript (Tr.) at 102, Exhibit D to McNally Declaration; Robinson Tr. at 147, Exhibit 3 to Glass Declaration), in a process in which they selected and assigned the actual Hearing Officer (in conjunction with the UFT, but with absolutely no individual input from Plaintiff). Defendants orchestrated and scripted the disciplinary specifications to be brought against Plaintiff and determined the timing of the specifications, and selected the witnesses to be called, the investigators to be assigned and the timing of those investigations, and even selected the dates Plaintiff would have to appear for the specifications to be heard. *See* Section 3020-a procedures modified by UFT-DOE agreement, Exhibit 2 to Glass Declaration. The Section 3020-a hearing took multiple hearing days over several months in which witnesses were heard and cross-examined, documents were received, and all testimony was transcribed under oath. After not prevailing at the hearing in seeking Plaintiff's termination, Defendant NYCDOE had 10 days to appeal Hearing Officer Woods' decision, and failed or chose not to do so. *See id.*

Based on all of the above, there clearly is a logical inference that Plaintiff was retaliated against by Defendants with the initiation of several false misconduct-based disciplinary charges seeking termination of his livelihood. These disciplinary charges were not preferred against Plaintiff until after Plaintiff filed discrimination charges with the New York State Division of Human Rights against his school principal and Defendant NYCDOE in November 2010. *See* SDHR Event history, Exhibit 1 to Glass Declaration. Given that Defendants concede that the disciplinary charges did not result in termination, that the misconduct charges against him were dismissed, and given that the Second Circuit has concluded that Section 3020-a charges fully litigated/adjudicated are entitled to collateral estoppel effect, what other good faith legitimate

5

nondiscriminatory basis could there be for Defendants' proceeding on these charges after reviewing the Hearing Officer's decision? Clearly, there is a triable issue of fact on the Plaintiff's retaliation claim—*i.e,* the misconduct charges and the 302-a proceeding were brought falsely against Plaintiff based on unlawful retaliatory motives. *See Ibok v. Securities Industry Automation Corp.*, 389 Fed. Appx. 210 (2d Cir. 2010) (plaintiff need only show that a retaliatory motive played a part in the alleged adverse employment action, even if it was not the sole cause); *Morey v. Somers Central School District*, 2007 WL 867203 (S.D.N.Y. 2007) (substantiation of charges not inconsistent with finding that defendants were retaliated in some part by retaliation); *Saunders v. NYCDOE et al.*, 2010 WL 2985031 (E.D.N.Y. July 20, 2010), at *8 ("whether a retaliatory motive played some part in motivating these adverse actions, is not precluded and remains a genuine dispute of a material fact raising an issue for trial", and denying DOE's motion for summary judgment on retaliation claim after teacher received four month suspension in Section 3020-a proceeding); *Jeter v. NYCDOE*, 2012 WL 2885140 (E.D.N.Y. July 13, 2012) (denying DOE's motion for summary judgment on retaliation claim after guidance counselor was found guilty of a few specifications in Section 3020-a proceeding).

The basis for a finding of retaliation against Plaintiff is more than plain and obvious here based on the timing of events. Plaintiff filed a SDHR complaint against the NYCDOE and his school administrators on November 9, 2010 based on age and religion, *see* Exhibit MM to McNally Declaration, and, by early December 2010, the school principal almost immediately thereafter initiated and/or orchestrated an internal NYCDOE Office of Equal Opportunity (OEO) bias complaint against Plaintiff, *see* Robinson Tr. at 116, Exhibit D to McNally Declaration; *see also* Exhibit II to McNally Declaration, falsely painting Plaintiff as a racist bigot and alleging numerous instances of his own extreme racial bias against students. *See* Weber Tr. at 138,

6

Exhibit B to McNally Declaration. That OEO complaint was eventually found to be unsubstantiated in October 2011, *see* Exhibit JJ to McNally Declaration, but the DOE elected to charge Plaintiff with Section 3020-a charges anyway based on the same alleged underlying misconduct. Those misconduct-based specifications were eventually dismissed by the 3020-a hearing officer. *See* Hearing Officer Decision, Exhibit HHH to Defendants' Declaration.

While Plaintiff acknowledges that the Hearing Officer sustained some of the incompetency-based specifications against him, this does not preclude a triable issue of fact on Plaintiff's retaliation claim. *See Jennifer Saunders v. NYCDOE, supra* (allowing retaliation claim to proceed to trial despite teacher receiving four month suspension after 3020-a case); *Jeter v. NYCDOE, supra* (allowing retaliation claim to proceed to trial despite several specifications being sustained against Plaintiff).[1] It also must be acknowledged that the incompetency based specifications were based on nothing more than subjective self-serving observations initiated by the very administrators who sought to terminate Plaintiff's employment, and who had no particular background or expertise in teaching, supervising, or evaluating the chemistry subject that Plaintiff teaches. *See* Robinson Tr, at 46, 57-58, Exhibit 3 to Glass Declaration. In addition, Plaintiff began to relentlessly receive significantly *more* unsatisfactory observations after he filed his SDHR complaint against his school administrators in November 2010, including two in December 2010 alone, *see* Exhibits KK and LL to McNally Declaration, a log of assistance in January 2011, *see* Exhibit MM to McNally Declaration, and additional unsatisfactory observations, action plans, or disciplinary file letters *every month* for the remainder of the 2010-11 school year, *see* Exhibits QQ-ZZ to McNally Declaration; curiously (and certainly not coincidentally), he only had *one* disciplinary file letter before he filed his

---

[1] Defendants' reliance on *Attard v. Bd of Educ.*, 2010 U. S. Dist. LEXIS 104802 (E.D.N.Y. 2010) is distinguishable because the teacher in that case was terminated by the Hearing Officer after a Section 3020-a hearing, as was the teacher in the case of *Burkybile v. Bd of Educ.*, also cited by Defendants.

7

SDHR complaint in November 2010, but *twelve* disciplinary file letters thereafter for the rest of the school year. *See* 2010-11 APPR evaluation, Exhibit BBB to McNally Declaration. Moreover, one observation which Plaintiff was told by the school administrators in October 2010 was satisfactory, was never written up once he filed the SDHR complaint against them. Indeed, Plaintiff never received a single written Satisfactory observation again from school administration once he filed the SDHR complaint, instead receiving six unsatisfactory observations by the end of the 2010-11 school year, and being served with Section 3020-a disciplinary charges by October 2011.

Under these circumstances, there is a logical causal connection between Plaintiff's protected activities and the adverse actions he suffered by the same District administrators he was filing complaints against—*i.e.*, the school principal and assistant principal. *See Brenes v. City of New York*, 2009 WL 742163 (2d Cir. 2009) (timing of negative evaluations shortly after complaints against supervisors probative of retaliatory animus); *Fierro v. City of New York, NYCDOE*, 591 F.Supp.2d 431 (S.D.N.Y. 2008)( "[t]emporal proximity is strong circumstantial evidence of improper intent"). These adverse disciplinary actions against Plaintiff can no longer be explained away as legitimate or nondiscriminatory after the Hearing Officer's decision dismissing the misconduct charges as without merit. *See Parklane Hosiery v. Shore*, 439 U.S. 322 (1979) (discussing appropriate use of offensive collateral estoppel available to plaintiff when defendants are foreclosed from litigating issues that defendants had previously litigated unsuccessfully in a previous action). For these reasons, the retaliation based claims must proceed to trial.

## POINT II

### GENUINE ISSUES OF MATERIAL FACT EXIST AS TO PLAINTIFF'S ADEA AND TITLE VII CLAIMS.

Genuine issues of material fact exist in this case for trial regarding liability against Defendants on Plaintiff's Title VII religious-based and ADEA claims.

With regard to his Title VII religious-based claims, given all that Plaintiff was subjected to by DOE administrators in the concerted campaign to paint him as an angry orthodox Jewish man racially prejudiced against the black students he taught, there remain genuine issues of fact regarding Plaintiff's religious hostile work environment and disparate treatment claims, including his being subject to an environment a reasonable person would perceive to be "sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment" and one in which Plaintiff also would subjectively perceive as hostile or abusive based on his race. *See Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007). This includes the outrageous portrait sought to be painted by his school principal claiming he was a religious Jew who made racially charged comments to his black students, or claiming that he deliberately put a curse on her personally based on his Jewish religious beliefs, which she speculated caused her house to burn down and to become involved in several car accidents (and for which she even gave him a disciplinary letter for his file). *See* Weber Tr. at 24 (day 2), Exhibit C to McNally Declaration; Robinson Tr. at 145, Exhibit 3 to Glass Declaration. Defendants also do not dispute they did not accommodate his request for time off for at least one religious day to bake matzahs for Passover in 2010, even though he gave notice far in advance and never had a problem before taking time off for this ritual and called his home on a Sukkot holiday in 2010 as a violation of Jewish law. *See* Weber Tr. at 125, Exhibit B to McNally Declaration. In addition, Defendants suspiciously waited until on or about *October 3, 2011* to serve him the disciplinary

9

termination charges, *see* Exhibit FFF to McNally Declaration, knowing that Plaintiff is an ultraorthodox Jew and was observing the highest holy days of the year at that time (Rosh Hashanah fell on September 28, 2011, and Yom Kippur fell on October 7, 2011 that year); given that there was no one specific event that apparently triggered the charges, the timing of the service of the charges is highly suspect and at least creates an inference of religious-based animus. Defendants further do not deny the joking of a coworker, Kevin Rank, about Plaintiff's religion that went unaddressed by administration. *See* Weber Tr. at 147, Exhibit B to McNally Declaration. Defendants also do not deny that Plaintiff was denied Kosher food at school meetings, while requests of non-Jewish teachers were accommodated. *See* Weber Tr. at 176-177, Exhibit B to McNally Declaration. Principal Robinson also acknowledged that Plaintiff was the only Jewish teacher at the school, and that she has not hired any Jewish teachers on her staff. *See* Robinson Tr. at 17-18, Exhibit 3 to Glass Declaration. Based on all of the above, a jury has more than ample evidence to conclude that repeated hostile acts tinged with religious-based animus are a basis for a finding of Plaintiff's hostile work environment and disparate treatment claims based on religion against Defendants.

Similarly, with regard to Plaintiff's age-based claims, there is no dispute that Plaintiff was among the oldest teachers at the school at 57 years old. Defendants in their memorandum of law refer to one teacher, Mr. Leon King, who is older than Plaintiff, but neglect to mention that he too has been relentlessly harassed by the school administration with unwarranted unsatisfactory observations late in his career and therefore retired under duress from the school in June 2012. *See* Robinson Tr. at 69, Exhibit 3 to Glass Declaration. Defendant Robinson also recently terminated the employment of probationary teacher Bruce Fosque, an older physics teacher at the school. *See* Robinson Tr. at 20, Exhibit D to McNally Declaration; Robinson Tr.

at 21, Exhibit 3 to Glass Declaration. Defendants also do not deny that Plaintiff was never given the ventilation hood, the purchase of which had been requested and approved by Founding Principal Nabors, while significant funds were nevertheless spent for the younger art teacher on a kiln. In addition, Plaintiff clearly stated that Principal Robinson often made comments that technology was not for him, *see* Weber Tr. at 165, Exhibit B to McNally Declaration, again providing additional evidence of age bias.

While Defendants try to claim that Plaintiff had performance-based problems with his teaching before Principal Robinson took over at the school, there is no dispute that Plaintiff never received an Unsatisfactory annual rating at the school before Principal Robinson arrived at the school.

## CONCLUSION

For the foregoing reasons Plaintiff respectfully requests that the Court issue an order denying Defendants' motion for summary judgment, allow this action to proceed to trial on his retaliation and discrimination claims, and grant such other and further relief, including reasonable attorneys' fees and costs, as the Court may deem just and proper.

Dated: New York, New York
       January 18, 2013

                        GLASS KRAKOWER LLP
                        Attorneys for Plaintiff
                        100 Church Street, 8th Floor
                        New York, NY 10007
                        (212) 537-6859

By:     s/_____
         BRYAN D. GLASS, Esq.